UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| LAKESIDE CARE, INC. | : | |
| Debtor | : | Bankruptcy No. 07-12658bif |

| | | |
|---|---|---|
| LAKESIDE CARE, INC. | : | |
| Plaintiff | : | |
| v. | : | |
| BRIGHTEN HEALTHCARE, LLP, et al. | : | |
| Defendants | : | Adversary No. 07-0175 |

...................................................

MEMORANDUM

...................................................

Brighten Health Group, LLC (referred to in the caption as Brighten Healthcare, LLP), James O'Connor and James Cook, all of whom are defendants in this adversary proceeding, have filed a joint motion to remand this proceeding to state court pursuant to 28 U.S.C. § 1452(b). This proceeding had been removed from the Court of Common Pleas, Bucks County, Pennsylvania by the plaintiff/debtor by virtue of 28 U.S.C. § 1452(a). The Brighten defendants also request that the bankruptcy stay be terminated after remand, so that the state court can adjudicate the remaining issues in this civil litigation. Alternatively, the movants request that this bankruptcy court "enforce[] the Order of the State Court dated December 13, 2006[.]" Motion, at 1.

Supporting this motion are the "Residents of Lakeside and Betty Rorabaugh, Anne Brenner, Robert Bound and Victoria Bound." The chapter 11 debtor,

Lakeside Care, Inc., filed a memorandum of law in opposition to the motion of the

Brighten defendants.[1]  The debtor is joined in opposing remand by Mark Worthington and

Raymond E, Miley III, who are shareholders and officers of the debtor.

At the hearing scheduled in this contested matter, the parties offered a

stipulation of certain facts, Ex. J-1, and copies of various documents.  Exs. A-HH.  No

other evidence was presented.  Based upon my review of the stipulation and documents,

the following facts are pertinent to the motion before me.


I.


On May 20, 2004, Lakeside Care, Inc. ("LCI") and Personal Care Builders

Corp. ("PCBC") commenced a state court action against Brighten and Messrs. Cook and

O'Connor in the Pennsylvania Court of Common Pleas, Bucks County, docketed at No.

04-03416-31.  In this complaint, the plaintiffs alleged that PCBC is a wholly owned

subsidiary of LCI, and that PCBC owned real estate in Langhorne, Pennsylvania upon

which LCI operated a "senior assisted care facility."  Ex. A, ¶¶ 6-8.  Messrs. Cook and

O'Connor are officers of Brighten.  Id., ¶ 9.

The complaint further averred, and the parties stipulated, Ex. J-1, ¶ 1, that

in October 2002, Brighten entered into agreements with LCI and PCBC regarding the sale

of both the facility and real estate.  On November 1, 2002, Brighten took over operations

---

[1]No answer to the motion was filed, but the movants have not sought default,
treating the memorandum as though it was a responsive pleading.

of the facility prior to consummation of the sale.  The parties anticipated that the actual

sale of the facility and the realty would occur by December 31, 2003.  Ex. A, ¶¶  10-14.

On April 2, 2004, Brighten notified the plaintiffs that it did not intend to

purchase either the facility or the realty and would cease managing/operating[2] the facility

by June 1, 2004.  Exs. A, ¶¶ 28, 30; J-1, ¶ 4.  LCI asserted in its state court complaint that

it no longer had the capacity to operate the assisted-living facility, and that there were 115

residents needing significant healthcare who would be injured if Brighten ceased

management/operation without placing these residents in alternative facilities.  Ex. A, ¶¶

31-34.

The plaintiffs in their state court complaint asserted against the Brighten

defendants causes of action for breach of contract, seeking damages and an injunction

requiring that they continue to manage/operate the facility until all of the residents had

been placed by defendants in alternative facilities.  The plaintiffs also demanded an

accounting of books and records concerning the operations of the facility and of deposits

placed by the residents with LCI prior to Brighten's assumption of operations, as well as

repayment of any deposits utilized or misused by the defendants.  Ex. J-1, ¶¶ 5-6; Ex. A.

On May 27, 2004, the parties entered into a stipulation approved by the

state court, wherein Brighten agreed to continue to manage/operate the facility pending

further negotiations, and agreeing to provide at least 20 days notice of any intended

cessation.  Exs. B; J-1, ¶7.  Apparently negotiations were not fruitful, and on November

---

[2]The parties' stipulation uses the phrase "managed/operated" because they could
not agree whether Brighten managed or operated the facility.  Ex. J-1 n.1.

3

12, 2004, the plaintiffs sought interim injunctive relief in state court to compel Brighten to continue to manage/operate the facility.  Ex. C.

On November 24, 2004, the state court issued an order partially granting the plaintiffs' request for injunctive relief.  This order recited that PCBC was intending to sell the realty to an another entity that would not use it as an assisted-living facility, thus necessitating the ultimate closing of the facility.  The state court order directed the orderly cessation of operations and placement of residents by Brighten in other facilities, and directed that some of the continuing costs of operations be borne by the plaintiffs (based upon operating reports prepared by Brighten) pending a final adjudication of the issue after the facility was closed.  Ex. E.

On December 22, 2004, the state court appointed an accountant to review the Brighten reports and mediate issues left open by the November 24th order, with each side paying 50% of the costs of the accountant's services.  Ex. F.  Brighten ceased managing/operating the facility on or about December 30, 2004, and all the residents were placed with other facilities.  Ex. J-1, ¶ 8.  PCBC sold the realty to the Philadelphia Biblical University in April 2005.  Id.

Thereafter, further disputes ensued involving the parties' responsibilities for payment of various operating expenses and the refund of deposits due to the former residents.  Ex. J-1, ¶ 9.  The state court held a hearing on November 22, 2006 and issued a decision and order dated December 13, 2006.  Ex. O.  The state court directed LCI and Messrs. Worthington and Miley to pay a total of $332,956.50 to the former residents.  Ex. O.  The state court's December 13th order provided:

> AND NOW, this 13th day of December, 2006, upon
> consideration of the Petition for Preliminary Injunction and

4

the several hearings thereon; and upon consideration of the Findings of Facts and the Conclusions of Law set forth in the attached Decision; it is hereby ORDERED and DECREED as follows:

a. Lakeside Care, Inc., Mark Worthington (personally) and Raymond E. Miley III (personally) are jointly and severally liable to the residents for the full total amounts found to be refundable times 1.5 and directed to return the following amounts to the persons designated within twenty (20) days hereof unless adequate proof of prior payment of the "Original Refund" can be submitted within ten (10) days hereof:

[listing of residents entitled to refund by name, amount of original deposit and "enhanced" amount to be repaid]

In the event that the deposit was made by a third party in behalf of the resident, payment shall be made to said party. In the event that neither the original payor nor the resident is, for any reason, available or the obligors cannot locate the proper payee, such refund shall be paid into the Court by payment to the Prothonotary where the funds shall be held for a period of one year from the date of receipt. Thereafter, if not claimed by the payee, the obligor may petition this Court for surrender of those funds to the obligors payable jointly.

Ex. O.

The parties agree that the state court did not adjudicate the "liability over the Resident Refunds as between the Debtor and the Brighten Parties and the liability for all other payables." Ex. J-1, ¶ 18. In other words, the December 13, 2006 order held that the former residents could look to LCI and Messrs. Worthington and Miley to recover 150% of their deposits originally paid to LCI, but did not decide whether the Brighten defendants had a duty to indemnify LCI or the two individuals; nor did the state court address the parties' respective liability for the expenses incurred by the facility after November 1, 2002.

5

After December 13, 2006, LCI and PCBC filed a motion for post-trial relief with the state court, Ex. P, which was denied on December 27, 2006.  Ex. R.  LCI also filed a motion to stay enforcement of the December 13th order.  Ex. Q.  That request does not appear to have been granted.  On January 12, 2007, Mr. Miley filed a writ of prohibition in the Pennsylvania Supreme Court, arguing that the state trial court had no personal jurisdiction over him, as he was not a party to the state court litigation, and so could not be held liable for the deposits due the former residents.  Ex. S.  Mr. Worthington filed with the Pennsylvania Supreme Court on January 12, 2007, an "emergency application . . . for an immediate stay of all proceedings in the trial court," arguing that he also was not a named party to the litigation and had been denied due process.  Ex. T.  The Pennsylvania Supreme Court denied without explanation both the writ of prohibition and the emergency application by an order dated January 30, 2007.  Ex. U.

On February 23, 2007, LCI and PCBC filed a petition for review with the Pennsylvania Superior Court.  Ex. X.  On February 28, 2007, the state trial court issued an opinion in support of its ruling denying post-trial relief.  Exs. Y; J-1, ¶ 15.  And on March 14, 2007, the Superior Court denied the petition for review as interlocutory and not warranting immediate adjudication.  Ex. Z.  The intermediate appellate court also, on April 2, 2007, quashed an appeal from the state court order of December 27, 2007 that had denied post-trial relief.  Ex. AA.

On May 4, 2007, LCI filed a voluntary petition in bankruptcy under chapter 11.  On May 8, 2007, it filed a notice of removal of the state court litigation against the Brighten defendants.  Ex. BB.  At the time the state court civil action was removed, there

6

were outstanding claims pending, discovery had not been completed, and a trial date to

conclude the matter had not been set.  Ex. J-1, ¶¶ 18-20.  Indeed, counsel for the Brighten

defendants has acknowledged in connection with this motion to remand that the pleadings

phase had not yet concluded in state court and that his client intended to file one or more

counterclaims against the plaintiffs.  The stipulated documents also reflect that the state

court had, by order dated May 21, 2007, scheduled a contempt hearing for June 27, 2007,

Ex. CC, which hearing was stayed by the court on June 12, 2007, due to LCI's bankruptcy

filing.  Ex. DD.

Finally, LCI's statement of financial affairs filed in this bankruptcy case

reflects that its sole income from operations in 2006 was $218 (from interest on a bank

account).  Ex. EE.  The debtor has no employees or business operations.  Id.  Its assets

appear to be limited to the amount it hopes to recover from the Brighten defendants

(about $1.1 million) plus a $28,000 claim in a pending lawsuit against All Staffing, Inc.

(which lawsuit was also removed to this court in July 2007).  Ex. GG.

The scheduled claims against LCI are all unsecured and total about $2.2

million.  Ex. HH.  However, of that total, five claims (the only ones not disputed by the

debtor) are purportedly owed to the debtor's shareholders, and aggregate about

$1,344,000.  Exs. EE, HH.  In addition, Mr. O'Connor of Brighten is listed as holding a

disputed claim in the amount of about $450,000.  Ex. HH.  The remaining listed claims

are in relatively small amounts, are likely to concern former residents, are all listed as

disputed, and total about $445,000.  Id.

II.

Pursuant to 28 U.S.C. § 1452(b), if litigation has been properly removed under section 1452(a), a bankruptcy court has the equitable power to remand some or all of the claims asserted in that litigation.  See, e.g., DVI Financial Services Inc. v. Cardiovascular Laboratories, Inc., 2004 WL 727105, at *2 (Bankr. E.D. Pa. 2004) ("[A] bankruptcy court has the equitable power to remand some or all of the claims removed under § 1452(b).") (citing In re RBGSC Investment Corp., 253 B.R. 369 (E.D. Pa. 2000)); In re Northwood Flavors, Inc., 202 B.R. 63, 67 (Bankr. W.D. Pa. 1996) ("Section 1452 permits a party to remove only some of the claims or causes of action and to leave the remainder for litigation in the other forum"); In re Princess Louise Corp., 77 B.R. 766, 773 (Bankr. C.D. Cal. 1987) (If the entire state court litigation is removed, "the state court has no further jurisdiction with respect to that action until such time as this court may remand part or all of the state court action.").

To be properly removed, however, the litigation must fall within bankruptcy court subject matter jurisdiction.  If a bankruptcy court has no subject matter jurisdiction to consider a removed proceeding, the litigation must be remanded.  See, e.g., In re Santa Clara County Child Care Consortium, 223 B.R. 40, 49-50 (B.A.P. 1st Cir. 1998); Textron Inv. Management Co. v. Struthers Thermo-Flood Corp., 169 B.R. 206, 211 (D. Kan. 1994) (an unrelated proceeding "is not removable [under section 1452(a)] and must be remanded to state court"); In re Hotel Mt. Lassen, Inc., 207 B.R. 935 (Bankr. E.D. Cal. 1997); see also Things Remembered, Inc. v. Petrarca, 516  U.S. 124, 116 S. Ct. 494,

497 (1995).  Therefore, it is appropriate to first consider the issue of bankruptcy court subject matter jurisdiction over this removed action.

Bankruptcy adversary proceedings can be grouped into three categories for purposes of determining subject matter jurisdiction under 28 U.S.C. § 1334.  See generally Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006).[3]  In litigation involving multiple claims or parties, the various claims must be analyzed for bankruptcy jurisdictional purposes on a claim by claim basis.  Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999) ("To determine the extent of the Bankruptcy Court's jurisdiction in this case we must examine each of the five claims presented to ascertain if it is core, non-core, or wholly unrelated to a bankruptcy case.").

First, there are "core" proceedings, which may be heard and resolved by the bankruptcy court via final judgment.  See 28 U.S.C. § 157(b)(1).  Core proceedings represent those disputes so intertwined with the bankruptcy process that Congress has the power under Article I of the Constitution to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits.  See 1 Norton Bankruptcy Law and Practice 2d, § 4.26 at 4-154 (1999) ("The word 'core' was a shorthand word employed to signify issues and actions that traditionally formed part of the functions performed under federal bankruptcy law.").  Core proceedings thus represent a subset of "related proceedings" in that they "arise under" or "arise in" the bankruptcy case.

A proceeding is classified as "core" under 28 U.S.C. § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise

---

[3]The fourth category mentioned in Stoe is the underlying bankruptcy case itself.

only in the context of a bankruptcy case." In re Marcus Hook Development Park, Inc.,

943 F.2d 261, 267 (3d Cir. 1991) (quoting Beard v. Braunstein, 914 F.2d 434, 444 (3d

Cir. 1990) which, in turn, quoted Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987)).

"Whether a proceeding is a 'core' proceeding that 'arises under' title 11 depends upon

whether the Bankruptcy Code creates the cause of action or provides the substantive right

invoked." Stoe v. Flaherty, 436 F.3d at 217.

In addition to claims based upon Bankruptcy Code provisions, core

proceedings include claims "arising in" a bankruptcy case.

> [C]laims that "arise in" a bankruptcy case are claims that by
> their nature, not their particular factual circumstance, could
> only arise in the context of a bankruptcy case.

Stoe v. Flaherty, 436 F.3d at 218; see In re Velocita Corp., 169 Fed. Appx. 712, 715 (3d

Cir. 2006). Thus, "[i]f the proceeding does not invoke a substantive right created by the

federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core

proceeding. . . ." In re Guild and Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996).

The second category of adversary proceedings are referred to as "non-core"

or "related" proceedings. A bankruptcy court may hear such proceedings but may submit

only proposed findings of fact and conclusions of law to the district court for de novo

review, see 28 U.S.C. § 157(c)(1), unless all parties agree that a final judgment may be

entered in the bankruptcy court. 28 U.S.C. § 157(c)(2); see, e.g., Halper v. Halper, 164

F.3d at 836. The Third Circuit Court of Appeals has defined a non-core proceeding in

the following terms:

> Non-core proceedings include the broader universe of all
> proceedings that are not core proceedings but are
> nevertheless "related to" a bankruptcy case. See 28 U.S.C. §
> 157(c)(1). "[T]he test for determining whether a civil

10

> proceeding is related to bankruptcy is whether the outcome of
> that proceeding could conceivably have any effect on the
> estate being administered in bankruptcy." Pacor v. Higgins,
> 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted); see In
> re Guild, 72 F.3d at 1180-81. "[T]he proceeding need not
> necessarily be against the debtor or against the debtor's
> property." In re Guild, 72 F.3d at 1180-81. "'A key word in
> [this test] is conceivable. Certainty, or even likelihood, is not
> a requirement. Bankruptcy jurisdiction will exist so long as it
> is possible that a proceeding may impact on the debtor's
> rights, liabilities, options, or freedom of action or the
> handling and administration of the bankrupt estate.'" Id. at
> 1181 (quoting In re Marcus Hook, 943 F.2d at 264)
> (emphasis omitted).

Halper v. Halper, 164 F.3d at 837 (footnote omitted); see also Belcufine v. Aloe, 112

F.3d 633, 636 (3d Cir. 1997).

Thus, the concept of a "related" proceeding is wider in scope than that of a

"core" proceeding. Indeed, all core proceedings must be related to a bankruptcy case and

so may be considered a subset of the broader set. See In re Central Ice Cream Co., 82

B.R. 933, 936 (N.D. Ill. 1987) ("[A] proceeding that is not a related proceeding a fortiori

cannot be a core proceeding.").

Finally, the third category of proceedings are those which fall outside the

definition of "non-core" because their outcome would have no effect upon the

bankruptcy case. The outcome of a dispute will not have any effect typically because it

will not affect the property to be administered in the bankruptcy case, the total assets to

be distributed, or the total claims to be paid. Over these "unrelated" proceedings a

bankruptcy court has no subject matter jurisdiction. See, e.g., EPIC Educational Projects

and Information Consultant Center, Inc. v. Dwelling House Savings & Loan Ass'n, 139

Fed. Appx. 388, 391 (3d Cir. 2005) ("[T]here is no possibility that the present action,

initiated by EPIC against Dwelling House, will have any effect on an estate being

11

administered in bankruptcy."); Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984). One

court has described unrelated bankruptcy proceedings in the following way:

> Generally, bankruptcy courts lack jurisdiction to hear
> controversies between third parties which do not involve the
> debtor or property of the debtor, unless the court cannot
> perform its administrative duties without resolving the
> controversy. . . .  Three elements must be satisfied in order to
> divest the bankruptcy court of its jurisdiction: (1) the
> proceeding must involve non-debtor, third-parties, (2) the
> proceeding must not involve the property of the debtor, and
> (3) the proceeding must not involve a necessary
> administrative function.

Plaza at Latham Associates v. Citicorp North America, Inc., 150 B.R. 507, 512

(N.D.N.Y. 1993) (citations omitted).

Clearly, LCI's claims against the Brighten defendants seeking damages are

related to its chapter 11 bankruptcy case.  The debtor's bankruptcy estate under section

541(a) includes all prepetition causes of action, see, e.g., In re Kollar, 176 F.3d 175, 178

(3d Cir. 1999), as well as all property interests the debtor held as of the commencement

of the bankruptcy case.  If the debtor's litigation against one or more defendants

succeeds, the property available for distribution to its creditors could be increased.

Therefore, all of the claims in this adversary proceeding could conceivably affect the

amount of distribution to creditors and so fall within the related-to scope of bankruptcy

court jurisdiction.  See, e.g., Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 56 (1989);

see generally  Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995); In re Zinchiak, 406

F.3d 214, 226-27 (3d Cir. 2005).

It is undisputed that the state court complaint in the removed litigation was

brought prior to the debtor's voluntary bankruptcy filing.  Moreover, the claims asserted

by LCI against the Brighten defendants involve only state law issues.  Obviously these

12

Case 07-00175-bif    Doc 25    Filed 09/27/07    Entered 09/27/07 15:26:43    Desc Main
Document    Page 13 of 24


claims cannot and do not involve substantive rights established by federal bankruptcy law. Nor does the removed proceeding involve litigation which could only arise within a bankruptcy case; indeed, it was commenced in state court before LCI ever filed for bankruptcy protection. Therefore, none of the claims raised in the complaint fall within the scope of core proceedings under section 1334(b). See, e.g., Stoe v. Flaherty, 436 F.3d at 208-09; In re Guild and Gallery Plus, Inc., 72 F.3d at 1178.[4]

Accordingly, removal of this entire litigation to bankruptcy court was permissible under 28 U.S.C. § 1452(a), as all claims asserted fell within the scope of this court's non-core, related to, subject matter jurisdiction. See generally In re Ezekoye, 185 Fed. Appx. 181, 185 (3d Cir. 2006). Thus, I shall consider the Brighten defendants'

---

[4]LCI's contention---that the significant amount of its claim against the Brighten defendants, plus the fact that this claim constitutes almost all of the debtor's assets, renders its prepetition state law contract claim a core matter—is unpersuasive. The size of the claim clearly shows that it is related to the underlying bankruptcy case, but does not render the claim one that "arises in" or "arises under" the Bankruptcy Code. See In re U.S. Brass, 110 F.3d 1261, 1268-69 (7th Cir. 1997) (holding that a $500 million claim for insurance proceeds was non-core):

> The right to complain about a preference is created by the
> Bankruptcy Code itself, whereas Eljer's claimed right to insurance
> coverage is a creation of state contract law and one that could be
> vindicated in an ordinary breach of contract suit if Eljer were not a
> bankrupt. The fact that it is an important right to the
> bankrupt–Eljer claims to be seeking $500 million in insurance
> coverage–is irrelevant. . . . "Core" is a defined term in the
> Bankruptcy Code, a term of art, rather than a metaphor. The
> impact of a claim on the size of the debtor's estate is a criterion of
> whether a claim is related to the bankruptcy and is therefore a
> noncore proceeding. . . . So Eljer has it backwards–arguing for
> classification as a core proceeding on the basis of a criterion for
> classification as a noncore proceeding.

(citations omitted).

13

motion for equitable remand.  <u>See</u> <u>generally</u> <u>In re Mid-Atlantic Handling Systems, LLC</u>,

304 B.R. 111, 120 (Bankr. D.N.J. 2003).

III.

Section 1452(b) of title 28 of the United States Code provides that "[t]he

court to which such claim or cause of action is removed may remand such claim or cause

of action on any equitable ground."  This subsection grants very "broad discretion" to the

court to remand a removed proceeding back to the state court from which it has been

removed or to deny the remand request. 1 <u>Collier on Bankruptcy</u> ¶ 3.07[5], at 3-93 (15th

ed. rev. 2007).

In general, among the factors to be considered by a court in determining

whether equitable grounds to remand exist are:

1. the court's duty to decide matters properly before it;

2. plaintiff's choice of forum as between state and federal
courts;

3. nature of the claim or claims, that is, whether purely state
law matters which could be better addressed by the state court
are involved;

4. prejudice to involuntarily removed parties;

5. comity considerations;

6. economical and/or duplicative use of judicial resources and

7. effect a remand decision would have on the efficient and
economic administration of the estate.

14

Gorse v. Long Neck, Ltd., 107 B.R. 479, 482 (D. Del. 1989); see, e.g., Drexel Burnham

Lambert Group, Inc. v. Vigilant Insurance Co., 130 B.R. 405, 407 (S.D.N.Y. 1991); see

also 1 Collier on Bankruptcy, ¶ 3.07[5], at 3-94 (15th ed. rev. 2007), identifying the

relevant factors as including:

> –forum non conveniens;
>
> –a holding that, if the civil action has been bifurcated by
> removal, the entire action should be tried in the same court;
>
> –a holding that a state court is better able to respond to a suit
> involving questions of state law;
>
> –a situation in which trial had already been held in the state
> court, that court had issued its opinion, and all that remained
> for it to do was enter judgment;
>
> –the expertise of the court in which the matter was pending
> originally, e.g., the Court of Federal Claims or the Court of
> International Trade.
>
> These and other equitable considerations might lead a district
> court to remand removed claims and causes of action.

(footnotes omitted).

In applying these general considerations, courts had noted that principles of

abstention found in 28 U.S.C. § 1334(c) should be included in the matrix of equitable

factors that are relevant to a determination of a motion to remand under section 1452(b).

See, e.g., Christo v. Padgett, 223 F.3d 1324, 1331 (11th Cir. 2000); In re Warren, 125

B.R. 128, 130-31 (E.D. Pa. 1991); In re Asousa, 264 B.R. 376, 381 (Bankr. E.D. Pa.

2001).  Recently, however, the Third Circuit Court of Appeals has instructed that the

abstention statute should be considered prior to application of the more general principles

of equitable remand.  Stoe v. Flaherty, 436 F.3d at 215:

The defendants argue that § 1452(b) provides the exclusive means by which a federal court can remand a removed bankruptcy-related case. But section 1334(c)(2) does not purport to interfere with a court's authority to remand under § 1452(b). Rather, § 1334(c)(2) governs only whether a district court must abstain from hearing a case. Once a district court determines that it either must abstain from hearing a removed case pursuant to 1334(c)(2) or should abstain pursuant to 1334(c)(1)'s permissive abstention provisions, it can consider whether there is reason for the suit to proceed in state court. If so, there will be an "equitable ground" justifying remand under § 1452(b).

Therefore, I shall consider whether abstention is required or appropriate.

A.

There are two types of abstention available to bankruptcy courts when an adversary proceeding is filed. Mandatory abstention is provided by 28 U.S.C. § 1334(c)(2), which states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Under the terms of this statute "a district court must abstain if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action

16

'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be

'timely adjudicated' in a state forum of appropriate jurisdiction." Stoe v. Flaherty, 436

F.3d at 213.

The Brighten defendants have the duty to establish the elements of

mandatory abstention, including demonstrating that the non-core claims raised by LCI in

its complaint could be timely adjudicated in state court. See generally Stoe v. Flaherty,

436 F.3d at 219 n.5; J.D. Marshall Int'l, Inc. v. Redstart, Inc., 74 B.R. 651, 654 (N.D. Ill.

1987); In re Midgard Corp., 204 B.R. 764, 778 (B.A.P. 10th Cir. 1997).

In this instance, the state court civil action has been pending since 2004, an

interlocutory order addressing only the issue of liability for the former residents' deposits

was issued in December 2006, and various interlocutory appeals were dismissed.  There

was no evidence offered by the Brighten defendants regarding the timely completion of

this litigation.  Indeed, they concede that the pleadings have not yet been concluded, and

discovery is not yet finished.

Although I do not suggest that the state court has been inattentive to this

litigation, I note that there is a complete absence of evidence on the timeliness element of

mandatory abstention.  Accordingly, I cannot conclude that the Brighten defendants have

proven that remand would likely yield a timely disposition of this litigation in state court.

See, e.g., Allen v. J.K. Harris & Co., LLC, 331 B.R. 634, 644 (E.D. Pa. 2005); Borne v.

New Orleans Health Care, Inc., 116 B.R. 487, 494 (E.D. La. 1990); In re Nationwide

Roofing & Sheet Metal, Inc., 130 B.R. 768, 779 (Bankr. S.D. Ohio 1991).  Therefore,

movants have not met their burden to demonstrate that all of the elements of mandatory

abstention are present so that equitable remand is appropriate.  See, e.g., Renaissance

17

Cosmetics, Inc. v. Development Specialists Inc., 277 B.R. 5, 13-14 (S.D.N.Y. 2002); In re

Lorax Corp., 295 B.R. 83, 94 (Bankr. N.D. Tex. 2003).

I thus consider discretionary abstention under 28 U.S.C. § 1334(c)(1).


D.


Permissive abstention involves equitable factors similar to those involved in

section 1452(b).  "Pursuant to these statutes [i.e., 28 U.S.C. §§ 1334(c)(1), 1452(b)], in

considering whether equity requires abstention and remand, courts assess (1) the effect on

the efficient administration of the bankruptcy estate, (2) the extent to which issues of state

law predominate, (3) the difficulty or unsettled nature of the applicable state law, (4)

comity, (5) the degree of relatedness or remoteness of the proceeding to the main

bankruptcy case, (6) the existence of a right to a jury trial, and (7) prejudice to the

involuntarily removed defendants. . . ."  In re RBGSC Inv. Corp., 253 B.R. 369, 381-82

(E.D. Pa. 2000); accord, e.g., Shared Network Users Group, Inc. v. WorldCom

Technologies, Inc., 309 B.R. 446, 451 (E.D. Pa. 2004); Shubert v. Roche Holding AG,

157 F. Supp. 2d 542, 545 (E.D. Pa. 2001).

In this district, the consensus position for permissive abstention involves

consideration of a non-exclusive list of factors:

> The following criteria guide the discretionary decision to
> abstain: (1) the effect on the efficient administration of the
> bankruptcy estate; (2) the extent to which state law issues
> predominate over bankruptcy issues; (3) the difficulty or
> unsettled nature of the applicable law; (4) the presence of
> related non-bankruptcy proceedings; (5) the basis of the
> bankruptcy court's jurisdiction over the claim; (6) the degree
> of relatedness or remoteness of the proceeding to the main

> bankruptcy case; (7) the substance rather than form of an
> asserted "core" proceeding; (8) the feasibility of severing state
> law claims from core bankruptcy matters to allow judgments
> to be entered in state court with enforcement left to the
> bankruptcy court; (9) the burden on the bankruptcy court's
> docket; (10) the likelihood that the commencement of the
> claim in bankruptcy court involves forum shopping; (11) the
> existence of the right to a jury trial; and (12) the presence in
> the proceeding of nondebtor parties.

Gilbert v. Ben Franklin Hotel Associates, 1995 WL 598997, at *1 (E.D. Pa. 1995); see

e.g., Allen v. J.K. Harris & Co., LLC, 331 B.R. at 645; In re Asousa Partnership, 276

B.R. 55, 74-75 (Bankr. E.D. Pa. 2002); see also Bricker v. Martin, 348 B.R. 28, 34 (W.D.

Pa. 2006); Civic Center Cleaning Co. v. Reginella Corp., 140 B.R. 374, 375-76 (W.D. Pa.

1992); In re Laroche Industries, Inc., 312 B.R. 249, 253-54 (Bankr. D. Del. 2004); 1

Norton Bankr. Law & Practice 2d, § 4:39 (2004).

  "Courts should apply these factors flexibly, for their relevance and

importance will vary with the particular circumstances of each case, and no one factor is

necessarily determinative." Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co., 6

F.3d 1184, 1189 (7th Cir. 1993). Furthermore, whether permissive abstention is

appropriate is committed to bankruptcy court discretion. See, e.g., Civic Center Cleaning

Co., Inc. v. Reginella Corp., 140 B.R. at 375; In re Asousa Partnership, 276 B.R. at 75.

Moreover, core claims as well as non-core claims are subject to permissive abstention.

See, e.g., In re Best Reception Systems, Inc., 220 B.R. 932, 952 (Bankr. E.D. Tenn.

1998).

  Application of the various factors surrounding permissive abstention and

equitable remand strongly support the Brighten defendants's request that this proceeding

be remanded to state court.

19

First, the matter has been pending in state court for more than three years. The state court (quite appropriately) has held numerous hearings focusing upon protecting the health and safety of the residents at the facility, by insuring that the facility remained operational until the residences could be placed elsewhere. Toward that end, it established procedures regarding payment of operating expenses, with the expectation that it would, at a later date, resolve whether the Brighten defendants or LCI should be liable for such obligations. It also anticipated deciding whether the Brighten defendants should be liable to LCI for the resident deposits.

Comity, as well as the recognition that the state court is much more familiar than I am regarding the facts surrounding the LCI versus Brighten dispute, support remand.

Second, the movants have established the first four elements of mandatory abstention. The non-core claims in this proceeding are derived from state law, and there would be no federal jurisdiction but for LCI's bankruptcy filing. When the only element of mandatory abstention not proven is based upon an absence of evidence regarding timeliness of the state court adjudication, permissive abstention and equitable remand may be warranted. See In re Titan Energy, Inc., 837 F.2d 325, 333 n.14 (8th Cir. 1988).

A third factor supporting abstention and equitable remand concerns the December 13, 2006 order issued by the state court, holding individual officers of LCI jointly and severally liable to repay the deposits owed to the former residents. These officers contend that their due process rights were violated by such an adjudication, as they were never made parties to the state court litigation. See generally Mayer v.

20

Garman, 590 Pa. 268 (2006).  Their attempt to obtain immediate review of that

adjudication has been denied as interlocutory.

　　　　　Bankruptcy court jurisdiction based upon the chapter 11 petition of LCI

may not extend to address the liabilities of these non-debtor parties to the former

residents.[5]  See generally In re ACI-HDT Supply Co., 205 B.R. 231 (B.A.P. 9th Cir.

1997) (suit against nondebtor parties—but not the debtor—who allegedly defrauded

investors through chapter 11 debtor's sale-leaseback program, which was removed from

state court to bankruptcy court, was non-core, unrelated case that would be remanded

back to state court).  And if it did, because the Rooker-Feldman doctrine applies in this

circuit to interlocutory state court orders, see Port Authority Police Benevolent

Association v. Port Authority Police Department, 973 F.2d 169, 177-78 (3d Cir. 1992)

("[W]e note that the interlocutory nature of the New York state court's order does not

preclude the application of the Rooker-Feldman doctrine in the instant case."); In re

Freehand H.J., Inc., 2007 WL 2071877, at *3 (Bankr. E.D. Pa. 2007), this court could not

overturn the December 13th order.  Thus, a remand of this proceeding would permit the

state court to issue final orders or judgments, and would afford the LCI officers the

opportunity to seek appellate reversal of those final adjudications.

　　　　　Fourth, LCI has no business operations, no employees, and no significant

assets other than its disputed claims against the Brighten defendants.  From its own

bankruptcy schedules, there appear to be just three categories of claims: those by the

---

[5]At oral argument, counsel for Messrs. Worthington and Miley asserted that this
court would not have jurisdiction to enforce the state court order against them.

former residents; those by the Brighten defendants (probably concerning the operation of the facility); and those made by LCI's own shareholders.

There will be no chapter 11 reorganization in this instance other than the adjudication of this adversary proceeding. LCI could not obtain a bankruptcy discharge of its debts under 11 U.S.C. § 1141(d). If LCI is not successful in this litigation, it will have no assets with which to fund a chapter 11 plan. And if it is successful in this lawsuit, it will not need any reorganization plan. It can simply use the litigation proceeds to repay its creditors and then dissolve under state law.

Given the timing of the bankruptcy filing after the state appellate court system declined to review the December 13th order, and the debtor's lack of operations and assets, it is likely that this bankruptcy case was filed solely to obtain a federal forum for this litigation. That supports abstention and remand. See Gilbert v. Ben Franklin Hotel Associates,1995 WL 598997, at *1 (E.D. Pa. 1995); In re Asousa Partnership, 276 B.R. 55, 74-75 (Bankr. E.D. Pa. 2002). Moreover, remanding this proceeding to state court will not adversely affect the adjudication of this chapter 11 case, since no liquidating chapter 11 plan could be proposed or approved until the debtor's claims against the Brighten defendants are determined.

Accordingly, for these reasons, remand under 28 U.S.C. § 1452(b) is warranted. An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| LAKESIDE CARE, INC. | : | |
| Debtor | : | Bankruptcy No. 07-12658bif |

---

| | | |
|---|---|---|
| LAKESIDE CARE, INC. | : | |
| Plaintiff | : | |
| v. | : | |
| BRIGHTEN HEALTHCARE, LLP, et al. | : | |
| Defendants | : | Adversary No. 07-0175 |

---

.................................................

ORDER

.................................................

AND NOW, this 27th day of September 2007, for the reasons stated in the

accompanying memorandum, it is hereby ordered that this proceeding is remanded to

state court pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b).

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Albert A. Ciardi, III, Esq.
Ciardi & Ciardi, P.C.
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103

Steven Thomas Hanford, Esq.
Hanford Professional Corp.
120 North Church Street, Suite 202
West Chester, PA 19382

John Francis Murphy Esq.
P.O. Box 657
Doylestown, PA 18901